UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  22-20173-CR-ALTONAGA/TORRES

UNITED STATES OF AMERICA

vs.

**LUIZ CARLOS CAPUCI JR.,**

      **Defendant.**
_____/

**GOVERNMENT'S MOTION FOR ALTERNATIVE VICTIM NOTIFICATION**

The United States of America, by and through undersigned counsel, respectfully moves the Court under 18 U.S.C. § 3771(d)(2) for authorization to employ the victim notification procedures described below in lieu of those prescribed by Section 3771(a), (b) and (c).  This motion is necessary due to the extraordinary number of victims in this case, and the challenge of contacting and identifying all of them in order to accord each of the victims the customary rights in the manner prescribed in Section 3771(a).

**I.**    **BACKGROUND**

On April 28, 2022, a grand jury sitting in the Southern District of Florida returned a three-count indictment charging Luiz Carlos Capuci, Jr. ("Defendant") with offenses stemming from his role in a massive cryptocurrency investment fraud scheme. (Dkt. No. 1).  Specifically, Defendant is charged with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371; and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  The Indictment also seeks forfeiture of various assets pursuant to 18 U.S.C. §§ 981 and 982. The Defendant remains a fugitive at this time. (Dkt. No. 8).

## II.  FACTUAL BACKGROUND

Defendant and his co-conspirators engaged in a sophisticated and multi-year cryptocurrency investment fraud scheme involving Defendant's company, Mining Capital Coin ("MCC").  From approximately November 2017 until the date when the Indictment in this case was filed, Defendant defrauded investors in the United States and abroad of over $62 million.  As part of his scheme, Defendant conspired with others to exploit investors' interest in cryptocurrency.  Defendant gave in-person presentations to potential investors in the United States and abroad and created video presentations and marketing materials regarding the investment opportunity. MCC's centerpiece investments were its "Mining Packages," which Defendant pitched to prospective investors as a safe, profitable investment.  This investment involved MCC allegedly using thousands of cryptocurrency mining machines to mine cryptocurrency and create sustained and reliable profits.  In addition, MCC marketed its purported cryptocurrency trading and Forex trading capabilities as mechanisms to create additional profits for investors.  In truth, however, through MCC, Defendant and his co-conspirators orchestrated a massive investment fraud scheme.  MCC did not generate income for investors through mining cryptocurrency.  In fact, there is no evidence that MCC mined any cryptocurrency at all, let alone enough to sustain the promised return to investors.

MCC operated as a pyramid scheme through which it relied on promoters to recruit additional investors to invest in MCC's program.  Additionally, Defendant and others marketed the "Mining Packages" and other investment opportunities to prospective investors through social media and direct communications.  To reward promoters for luring investors, MCC paid promoters commissions based on the number of new investors they brought in and the quantity of their investment.

Defendant, his co-conspirators, and promoters defrauded thousands of investors worldwide.  The videos Defendant and others posted online were accessible to anyone in the world who had access to the internet.  Due to the nature of the scheme and the sheer volume of investors, which is believed to exceed 50,000, it has been challenging to identify each and every individual

victimized by this scheme. Accordingly, the Government respectfully requests that the Court authorize alternative means of victim notification.

### III. LEGAL ARGUMENT

The Crimes Victims' Rights Act (the "CVRA") provides certain rights to victims in federal criminal proceedings. *See* 18 U.S.C. § 3771. Among these rights is the right to "reasonable, accurate, and timely notice" of public court proceedings. *See* 18 U.S.C. § 3771(a). The CVRA requires "[o]fficers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation and prosecution of crime make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection [3771](a)," 18 U.S.C. § 3771(c)(1), and it instructs the Court to "ensure that the crime victim is afforded" those rights. *See* 18 U.S.C. § 3771(b). The CVRA defines a crime victim as "a person directly and proximately harmed as a result of the commission of a Federal offense." *See* 18 U.S.C. § 3771(e). Importantly, the CVRA recognizes that for crimes involving multiple victims, the Court has discretion to adopt procedures to accord victim rights without unduly interfering with the criminal proceedings. Thus, 18 U.S.C. § 3771(d)(2) provides:

> In a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims the rights described in subsection (a), the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings.

The CVRA places no limitations on the alternative procedures which a court may fashion other than that the procedures be reasonable to effectuate the CVRA and that they not unduly complicate or prolong the proceedings. *Id*.

There is an extremely large number of victims in this case and compiling a complete list of their identities, without an alternative means of victim notification, would be impossible. Defendant, his co-conspirators, and other promoters lured victims to invest in MCC by posting videos and other material to social media. Defendant was not the only individual posting materials that promoted MCC on global internet platforms. He had many individuals and tiers of promoters beneath him who helped him defraud victims in this case. As a result, it would be very challenging

for investigators, without an alternative means of victim notification, to identify each victim that was defrauded here.

Additionally, tracing the fraud proceeds back to each victim has proven nearly impossible. Once MCC received investors' funds, it laundered this money internationally through a collection of its cryptocurrency wallets in order to promote and conceal the underlying fraud. Therefore, by its very design, the scheme has made identifying individual victims with precision nearly impossible. Moreover, many of the servers with the data for these wallets are located outside of the United States. Even if investigators are able to seize this data, it will take a great deal of time and resources to review the data and identify additional victims.

Consequently, express compliance with Section 3771(a), (b) and (c) is impracticable. The Government does not have the resources to provide each of the individual victims with the required notice specified in Section 3771(a). Due to the large number of victims and the complicated nature of this case, the Government intends to use the FBI's website to direct victims to a case-specific website where all required notices will be posted.

The Government will contact known potential victims and invite them to fill out a victim impact statement on the FBI's site. The FBI plans to proactively contact potential victims using email addresses on a MCC investor list that MCC counsel provided to the Securities Exchange Commission (SEC) in the context of the SEC's civil investigation of MCC. The FBI will vet the responses to determine who are actual victims, and then enter vetted information into the Victim Notification System (VNS).

If the Court grants this Motion, the Government plans to publish a link on the United States Attorney's Office for the Southern District of Florida's website. The Government will continue to use best efforts to accord standard victim rights to identified victims where possible. Taken together, the alternative procedures requested in this Motion are reasonable to effectuate the CVRA and will not unduly complicate or prolong the proceedings. *See* 18 U.S.C. § 3771(d)(2). Indeed, there is every reason to believe that the proposed VNS and notice websites will expedite the process of identifying victims and providing restitution as funds become available.

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant this motion for alternative victim notification procedures.

Respectfully submitted,

LORINDA LARYEA
ACTING CHIEF, FRAUD SECTION

By:   /s/ Sara Hallmark
Sara Hallmark
Florida Special Bar No. A5502900
Kevin Lowell
Trial Attorneys
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, D.C. 2000599 NE 4th Street
Tel: (202) 262-7795
Email: sara.hallmark2@usdoj.gov

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:   /s/ Yisel Valdes
Yisel Valdes
Florida Special Bar No. A5502330
Assistant United States Attorney
United States Attorney's Office
99 NE 4th Street
Miami, FL 33132
Tel: (305) 961-9260
Email: yisel.valdes@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 15, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Sara Hallmark*
Trial Attorney